# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| QUALITY INFUSION CARE INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-3308 |
| | § | |
| | § | |
| AETNA HEALTH INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Plaintiff Quality Infusion Care, Inc. sued Aetna Health, Inc. in Texas state court, alleging that Aetna was liable to pay for prescription drugs provided to an individual insured under an Aetna plan. Quality Infusion sued Aetna under the Texas "Any Willing Provider" statute, TEX. INS. CODE. ANN. art. 21.52B (West. Supp. 2005). In the state court suit, Quality Infusion alleged that Aetna initially paid for drugs prescribed for the insured's breast cancer treatment, but stopped paying after determining that Quality Infusion was an out-of-network provider under the plan terms. Aetna timely removed, asserting federal-question jurisdiction based on preemption under ERISA, 29 U.S.C. § 1001 *et seq*. Quality Infusion has moved to remand, (Docket Entry No. 9), and Aetna has responded, (Docket Entry No. 12).

Based on the motion and response, the pleadings, the parties' submissions, and the applicable law, this court denies Quality Infusion's motion to remand. The reasons are explained below.

**I.     Background**

The insured, Alix Cadavid, worked for Escape Family Resources Center. The Center provided employees, including Cadavid, with health insurance through the Aetna Small Group HMO Plan Benefits Package. Aetna has submitted a copy of the Group Agreement and Certificate of Coverage. (Docket Entry No. 12, Ex. A).

In 2004, Cadavid was diagnosed with breast cancer. From October 29, 2004 until approximately December 16, 2004, Cadavid received infusion therapy prescribed by her doctor. Quality Infusion provided the prescribed drugs and billed $75,340.81. Cadavid assigned her insurance benefits to Quality Infusion, which in turn sought payment from Aetna. Aetna paid Quality Infusion $3,473.70, then allegedly refused to make any further payments on the ground that Quality Infusion was an out-of-network provider under the plan terms. Quality Infusion sued Aetna in state court under the Texas "Any Willing Provider" statute. This removal and remand motion followed.

**II.    The Legal Standards**

Federal-question jurisdiction arises when a plaintiff's allegations are founded on a claim or right arising under the Constitution, treaties, or laws of the United States. 28 U.S.C. §§ 1441(b), 1331. Questions about federal-question jurisdiction are generally analyzed under the well-pleaded complaint rule. *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 152–53 (1908). If, on its face, the plaintiff's complaint raises no issue of federal law, federal question jurisdiction is lacking. *See Franchise Tax Bd. v. Laborers Vacation Trust*, 463 U.S. 1 (1983). If the plaintiff's complaint asserts only state-law claims, federal jurisdiction may

nonetheless exist if those claims are completely preempted by federal law. If complete preemption applies, the state-law claims in the plaintiff's complaint will be "recharacterized" as stating a federal cause of action. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386 (1987) ("Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law."). The recharacterization of a plaintiff's state-law claim makes removal proper on the basis of federal-question jurisdiction. *See Heimann v. Nat'l Elevator Indus. Pension Fund*, 187 F.3d 493, 499 (5th Cir. 1999); *Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 269 (5th Cir. 2004).

The fact that a given federal law might "apply" or even provide a federal defense to a state-law cause of action is insufficient to establish federal-question jurisdiction. A court must find complete preemption. *See Franchise Tax Bd.*, 463 U.S. at 23–24. "In complete preemption a federal court finds that Congress desired to control the adjudication of the federal cause of action to such an extent that it did not just provide a federal defense to the application of state law; rather, it replaced the state law with federal law and made it clear that the defendant has the ability to seek adjudication of the federal claim in a federal forum." 14B CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3722.1 (3d ed. 1998). To establish federal-question jurisdiction through preemption, the defendant must demonstrate that Congress intended not just to "preempt a state law to some degree," but to substitute "a federal cause of action for a state cause of action." *Schmeling v. NORDAM*, 97 F.3d 1336, 1341 (10th Cir. 1996).

**III.     Analysis**

Aetna argues that ERISA completely preempts Quality Infusion's state-law claims. ERISA provides for complete preemption under section 502 and for conflict preemption under section 514.  Complete preemption arises under the section 502 civil-enforcement provisions when a state-law cause of action duplicates, supplements, or supplants one of the remedies provided in that section.[1]  *See Aetna Health Inc. v. Davila,* 542 U.S. 200, 207–08 (2004); *Metro. Life Ins. Co. v. Taylor,* 481 U.S. 58, 63–64 (1987).  "Section 502, by providing a civil enforcement cause of action, completely preempts any state cause of action seeking the same relief." *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 337 (5th Cir. 1999).  Conflict preemption under section 514 exists when state-law claims are asserted that "relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." 29 U.S.C. § 1144(a).  A state-law claim may "relate to" a benefit plan even if the state law is not specifically designed to affect such plans and the effect is only indirect.  *See Ingersoll-Rand Co.,* 498 U.S. at 139 (*citing Pilot Life Ins. Co. v. Dedeaux* , 481 U.S. 41, 47 (1987)).  "Unlike the scope of § 502(a)(1)(B), which is jurisdictional and creates a basis for removal to federal court, § 514(a) . . . governs the law that will apply to state law claims, regardless of whether the case is brought in state or federal

---

[1] Section 502(a)(1)(B) allows a plan participant or beneficiary to bring a civil action "to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

court." *Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 277 (3d Cir. 2001) (internal quotations omitted)).

The complaint shows, and the parties do not dispute, that Quality Infusion's claims relate to the Aetna Small Group HMO Plan Benefits Package. (Docket Entry No. 12, Ex. A). Aetna asserts complete preemption because Quality Infusion is claiming plan benefits assigned by an insured. Quality Infusion argues that under *Kentucky Association of Health Plans, Inc. v. Miller*, 538 U.S. 329 (2003), conflict as well as complete preemption is required and that its state-law claims are not subject to conflict preemption. The Fifth Circuit has held that conflict preemption is not a jurisdictional requirement. In *Arana v. Ochsner Health Plan*, 338 F.3d 433 (5th Cir. 2003), the court, sitting *en banc*, held "that only complete preemption of a claim under ERISA § 502(a) is required for removal jurisdiction; conflict preemption under ERISA § 514 is not required; and we overrule the relevant portions of our precedent to the contrary." *Id.* at 440 (footnotes omitted). This argument does not require remand.

Quality Infusion also argues that complete preemption does not apply to its state-law claims. The Texas "Any Willing Provider" law reads, in pertinent part:

> (a) A health insurance policy or managed care plan that is delivered, issued for delivery, or renewed or for which a contract or other agreement is executed may not:
>
>> (1) prohibit or limit a person who is a beneficiary of the policy from selecting a pharmacy or pharmacist of the person's choice to be a provider under the policy to furnish pharmaceutical services offered or provided by

>that policy or interfere with that person's selection of a pharmacy or pharmacist;
>
>(2) deny a pharmacy or pharmacist the right to participate as a contract provider under the policy or plan if the pharmacy or pharmacist agrees to provide pharmaceutical services that meet all terms and requirements and to include the same administrative, financial, and professional conditions that apply to pharmacies and pharmacists who have been designated as providers under the policy or plan; or
>
>(3) require a beneficiary of a policy or a participant in a plan to obtain or request a specific quantity or dosage supply of pharmaceutical products.

TEX. INS. CODE. ANN. art. 21.52B § 2.  The statute defines a "managed care plan" as "a health maintenance organization, a preferred provider organization, or another organization that, under a contract or other agreement entered into with a participant in the plan: (A) provides health care benefits, or arranges for health care benefits to be provided, to a participant in the plan; and (B) requires or encourages those participants to use health care providers designated by the plan." *Id.* at § 1(6).  Quality Infusion does not dispute that the Aetna Small Group HMO Plan Benefits Package is a "managed care plan" under the statute.

In *Texas Pharmacy Association v. Prudential Insurance Company of America*, 105 F.3d 1035 (5th Cir. 1997), the Fifth Circuit held that ERISA completely preempted claims under the Texas "Any Willing Provider" statute.  *Id.* at 1037, 1039.  Although Quality Infusion is correct that *Miller* established a new test for determining whether a law is subject to *conflict* preemption, the case does not undercut the Fifth Circuit's earlier holding that the Texas "Any Willing Provider" statute is completely preempted by ERISA.  *See Provident*

*Life & Accident Ins. v. Sharpless*, 364 F.3d 634, 640 (5th Cir. 2004) ("The only pertinent difference between the *Miller* analysis and the previous test is that in place of the second *Miller* inquiry, the previous test asked whether the statute in question transfers or spreads the risk from the insured to insurer.") (internal quotation and marks omitted).

Quality Infusion seeks "to recover benefits due to [it] under the terms of [the] plan" and "to enforce [its] rights under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B) (ERISA § 502(a)(1)(B)). This is an ERISA claim and is subject to ERISA preemption under *Texas Pharmacy Association*, even considering intervening Supreme Court case law.[2]

## IV.   Conclusion

This court has federal jurisdiction because Quality Infusion's claims under the Texas "Any Willing Provider" statute are completely preempted by ERISA. Quality Infusion's motion to remand is denied.

SIGNED on April 27, 2006, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge

---

[2] The Texas legislature has not amended the "Any Willing Provider" statute since *Texas Pharmacy Association* was decided.