**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| QUALITY INFUSION CARE INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-3308 |
| | § | |
| | § | |
| AETNA HEALTH INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

Plaintiff Quality Infusion Care, Inc. sued Aetna Health, Inc. in Texas state court, alleging damages from Aetna's refusal to pay for at-home chemotherapy infusion services provided to a participant under an Aetna HMO plan. The participant assigned the benefits to Quality Infusion. Aetna denied the claim for benefits because Quality Infusion is a non-network provider and the Aetna plan did not cover out-of-network services if the same services were available from participating providers. Quality Infusion sued Aetna in Texas state court under the Texas Any Willing Provider statute, TEX. INS. CODE. ANN. art. 21.52B (Vernon 2005), and the Aetna plan. In the state-court suit, Quality Infusion alleged that Aetna initially paid for the drugs prescribed for the plan participant's breast-cancer treatment, but stopped paying after determining that Quality Infusion was an out-of-network provider. Aetna timely removed, asserting federal-question jurisdiction based on preemption under ERISA, 29 U.S.C. § 1001 *et seq.* This court denied Quality Infusion's motion to remand,

1

finding complete preemption. Aetna has now moved for summary judgment, asserting that the Texas Any Willing Provider statute does not provide a basis for a nonparticipating provider to recover ERISA plan benefits from an HMO; that such a claim is subject to ERISA conflict preemption under *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 210 (2004); and that an ERISA claim for benefits fails because Aetna did not arbitrarily or capriciously deny the claim. (Docket Entry No. 15). In response, Quality Infusion asks this court to reconsider its refusal to remand and, if denied, to deny Aetna's summary judgment motion. Quality Infusion argues that the Texas Any Willing Provider statute does provide a cause of action for recovery of payments under an HMO and that, alternatively, if ERISA conflict preemption applies, summary judgment should not be granted on an ERISA claim that Aetna arbitrarily and capriciously denied the benefits. (Docket Entry No. 18). Aetna has filed a response to Quality Infusion's reconsideration motion, (Docket Entry No. 19), and a reply to the response to Aetna's summary judgment motion, (Docket Entry No. 20).

Based on the motions and responses, the pleadings, the parties' submissions, and the applicable law, this court agrees with Quality Infusion that reliance on the Fifth Circuit's holding in *Texas Pharmacy Association v. Prudential Ins. Co. of America*, 105 F.3d 1035 (5th Cir.), *cert. denied*, 52 U.S. 802 (1997), is incorrect in part because of the later decision in *Kentucky Association of Health Plans, Inc. v. Miller*, 538 U.S. 329 (2003), and in part because the Fifth Circuit case addressed conflict rather than complete preemption. This court nonetheless concludes that complete preemption applies. The motion for reconsideration is therefore denied. This court grants summary judgment on the claim for wrongful denial of

benefits under ERISA and for violation of the Texas Any Willing Provider statute. As a result of these rulings, final judgment is entered by separate order. The reasons are explained below.

**I.     Background**

The relevant facts are undisputed. The Escape Family Resources Center provided its employees with health insurance through the Aetna Small Group HMO Plan Benefits Package. The parties agree that the Escape Family Resource Center employee welfare benefit plan (the "Plan") is governed by ERISA. In 2004, a Plan participant was diagnosed with breast cancer. Her doctor prescribed home infusion chemotherapy. From October 29, 2004 until approximately December 16, 2004, she received home-infusion therapy from Quality Infusion.

Quality Infusion is a home health care agency. Its services include administering intravenous medications. Quality Infusion is not a participating medical provider in Aetna's HMO network  Quality Infusion provided the prescribed drugs and billed $75,340.81. The beneficiary assigned her Plan benefits to Quality Infusion, which in turn sought payment from Aetna. Aetna paid Quality Infusion $3,473.70, then refused to make further payments on the ground that Quality Infusion was an out-of-network provider and not covered under the Plan terms. Quality Infusion sued Aetna in state court under the Texas Any Willing Provider statute.

Aetna has submitted a copy of the Group Agreement and Certificate of Coverage. (Docket Entry No. 12, Ex. A). The Plan pays for "Covered Benefits," which are defined in

the Certificate of Coverage.  The Certificate of Coverage states that the Plan does not cover out-of-network services, with two exceptions.  If medically necessary services are not available from participating providers, the HMO will allow referral to a nonparticipating provider, subject to Plan provisions.  And if emergency or urgent care is required, the Plan provides coverage for out-of-network services without a referral.

On October 19, 2004, Quality Infusion began administering home infusion chemotherapy for the Plan participant.  On October 20, 2004, Quality Infusion asked Aetna to authorize the treatment.  Aetna initially denied the request by telephone because Quality Infusion was not a network provider.  Aetna then referred the claim for review to determine whether a network provider was available.  The review showed that within a sixty-mile radius of the beneficiary's zip code, there were at least two participating home health agencies that could provide the services at her home and a third that could do so at its office.  An Aetna medical director denied Quality Infusion's request for authorization to perform the services because it was an out-of-network provider and participating providers were available.  On October 26, 2004, Aetna advised Quality Infusion of the decision and of its right to appeal.  The information was also relayed to the Plan participant and her doctor.

Quality Infusion did appeal the denial, without success.  Quality Infusion took the same position in the appeal that it does in this case, asserting that under the Texas Any Willing Provider statute, Aetna had no choice but to allow benefits for an out-of-network provider. (Docket Entry No. 15, Ex. 2-2 at A0004).  Aetna rejected this legal position and insisted that it could limit benefits to participating providers under the Plan terms.

Quality Infusion submitted claims for services provided from October 20, 2004 through December 16, 2004. The total, according to Quality Infusion, was $75,340.18; Aetna's records show a slightly lower amount. Quality Infusion complained about the denial and on August 11, 2005, Aetna held a hearing on the complaint before its Complaint Appeal Panel. Quality Infusion's general counsel participated in the hearing by telephone. The panel affirmed the denial because Quality Infusion was not a network provider and there were participating home-infusion-service providers available to the Plan participant. (Docket Entry No. 15, Ex. 2-4 at A 00307).

Quality Infusion sued Aetna in state court seeking damages for the refusal to pay. Quality Infusion alleged that by refusing to pay the amounts billed for providing in-home infusion services to the insured under the Plan, Aetna violated article 21.52B, § 2(a)(1) and (2) of the Texas Willing Provider statute.

In 1991, the Texas legislature passed the Any Willing Provider statute pertaining to pharmacies. The statute was amended in 1995 and now provides in part:

§. 2. (a) A health insurance policy *or managed care plan* . . . may not:

   (1) prohibit or limit a person who is a beneficiary of the policy from selecting a pharmacy or pharmacist of the person's choice to be a provider under the policy to furnish pharmaceutical services offered or provided by that policy or interfere with that person's selection of a pharmacy or pharmacist;

   (2) deny a pharmacy or pharmacist the right to participate as a contract provider under the policy *or plan* if the pharmacy or pharmacist agrees to provide pharmaceutical services that meet all terms and requirements and to include the same administrative, financial, and professional conditions that apply to pharmacies and pharmacists who have been designated as providers under the policy *or plan*; . . .

5

>        (3) require a beneficiary of a policy *or participant in a plan* to obtain
> or request a specific quantity or dosage supply of pharmaceutical products.

Tex. Ins. Code Ann. art. 21.52B, § 2 (Vernon 2005). The emphasized portions of the statute were added by the 1995 amendments, when the Texas Legislature amended the Any Willing Provider statute to include references to managed care plans. Acts 1995, 74th Leg., ch. 852, §§ 1–4, eff. Sept. 1, 1995. A "managed care plan" was defined in the 1995 amendments to include "a health maintenance organization, a preferred provider organization, or another organization that, under a contract or other agreement entered into with a participant in the plan . . . provides health care benefits. . . ." Tex. Ins. Code Ann. art. 21.52B, § 1(6) (Vernon 2005). By contrast, the statutory definition of a "health insurance policy," unchanged from the 1991 statute, excludes coverage by a health maintenance organization. The section states that a "[h]ealth insurance policy . . . does not include evidence of coverage provided by a health maintenance organization. . . ." *Id.* at § 1(1). Section 2(a)(1), which refers to a beneficiary of a policy and does not refer to a participant in a plan, was similarly unchanged in the 1995 amendments.

Quality Infusion is not seeking an injunction requiring Aetna to enter into a care-provider service agreement. To the contrary, Aetna has provided summary judgment evidence that it submitted a proposed agreement to Quality Infusion to participate in Aetna's HMO network and received no response. (Docket Entry No. 15, p. 14 and Ex. 3, ¶¶ 3-4). Instead, Quality Infusion states that by filing this suit, it is "specifically seeking the right to participate as a contract provider in the Plan with respect to the services rendered to" the Plan

beneficiary. (Docket Entry No. 18, p. 3). Quality Infusion argues that if it provides out-of-network services to a Plan participant, even with knowledge that the Plan did not cover such services, and files suit, Aetna must treat it as part of the network solely for the services rendered to the individual Plan participant, without having to enter into a network care-provider service agreement.

Quality Infusion also argues that if ERISA does apply, summary judgment should be denied on a claim for wrongful denial of benefits. Aetna asserts that as a matter of law, Quality Infusion has not raised a fact issue as to whether the benefits denial was an abuse of discretion. It is undisputed that under the Plan, Aetna reserved to itself "complete authority to review all claims for Covered Benefits under this Group Agreement. In exercising such responsibility, we shall have discretionary authority to determine whether and to what extent eligible individuals and beneficiaries are entitled to coverage . . . .We shall be deemed to have properly exercised such authority unless we abuse our discretion by acting arbitrarily and capriciously." (Docket Entry No. 15, Ex. 1-B, p. A00027).

The first issue is jurisdiction, raised by Quality Infusion's motion for reconsideration of the denial of remand. The second issue is whether Aetna is entitled to summary judgment on Quality Infusion's claims. Each issue is addressed below.

## II. The Motion for Reconsideration

The jurisdictional issue is whether section 502(a) of ERISA completely preempts Quality Infusion's claim under the Texas Any Willing Provider statute. There are two types of preemption under ERISA: "complete preemption" under section 502, 29 U.S.C. § 1132,

and "express preemption" under section 514, 29 U.S.C. § 1144. Complete preemption occurs whenever Congress "so completely [preempts] a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58 (1987). Complete preemption arises under the section 502 civil-enforcement provisions of ERISA when a state-law cause of action duplicates, supplements, or supplants one of the remedies provided in that section.[1] *See Aetna Health Inc. v. Davila,* 542 U.S. 200, 207–08 (2004); *Metro. Life Ins. Co. v. Taylor,* 481 U.S. 58, 63–64 (1987). "Section 502, by providing a civil enforcement cause of action, completely preempts any state cause of action seeking the same relief." *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 337 (5th Cir. 1999); *Neumann v. AT & T Communications, Inc.*, 376 F.3d 773, 779 (8th Cir.2004).

Express or conflict preemption under section 514 exists when state-law claims are asserted that "relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." 29 U.S.C. § 1144(a). A state-law claim may "relate to" a benefit plan even if the state law is not specifically designed to affect such plans and the effect is only indirect. *See Ingersoll-Rand Co.,* 498 U.S. at 139 (*citing Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47 (1987)). "Unlike the scope of § 502(a)(1)(B), which is jurisdictional and creates a basis for removal to federal court, § 514(a) . . . governs the law that will apply to state law claims, regardless of whether the case is brought in state

---

[1] Section 502(a)(1)(B) allows a plan participant or beneficiary to bring a civil action "to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

or federal court." *Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 277 (3d Cir. 2001) (internal quotations omitted)).  Conflict preemption under section 514 does not allow for removal to federal court, but it does provide an affirmative defense against claims not completely preempted under section 502. *Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 275 n. 34 (5th Cir. 2004).

The primary basis for Quality Infusion's motion for reconsideration is the same argument raised before this court ruled.  Quality Infusion asserts that the Supreme Court decision in *Kentucky Association of Health Plans, Inc. v. Miller*, 538 U.S. 329 (2003), requires remand. Aetna responds that *Miller* addressed whether the Kentucky version of the Any Willing Provider statute was saved from conflict preemption under section 514 as a law that regulates insurance, but did not address complete preemption.  Aetna asserts that this court correctly relied on the complete preemption analysis in *Aetna Health, Inc. v. Davila*, 542 U.S. 200 (2004), in denying the motion to remand.

This court agrees with Quality Infusion on one point:  reliance on *Texas Pharmacy Association v. Prudential Insurance Co. of America*, 105 F.3d 1035 (5th Cir. 1997), *cert. denied*, 118 S.Ct. 75 (1997), was incorrect.  Two reasons support Quality Infusion's argument. First, *Texas Pharmacy Association* was decided before *Miller* and applied a test for conflict preemption that *Miller* changed in part.  In *Texas Pharmacy Association,* the Association filed suit in federal court seeking a declaratory judgment that the Any Willing Provider statute required Prudential Insurance to contract with any Texas pharmacy that was willing to accept Prudential's terms and conditions.  The Fifth Circuit held that the 1991

statute, which did not include references to managed care plans, "relates to ERISA plans because it 'eliminates the choice of one method of structuring benefits,' by prohibiting plans from contracting with pharmacy networks that exclude any willing provider." 105 F.3d at 1037. The court applied the three-part test in *Metropolitan Life Insurance Co. v. Massachusetts*, 471 U.S. 724, 743 (1985), to determine if the statute fell within the insurance savings clause. The Fifth Circuit looked at: "'(1) [w]hether the practice (the statute) has the effect of spreading the policyholders' risk; (2) whether the practice is an integral part of the policy relationship between the insurer and the insured; and (3) whether the practice is limited to entities within the insurance industry.'" *See Texas Pharmacy*, 105 F.3d at 1038-1039. Because the pre-1995 statute was an insurance regulation that met all three of the *Metropolitan Life* factors, it was saved from preemption. *See id.* at 1042. The 1995 amendments, which broadened the statute to apply to HMOs, PPOs, and other health care providers, was not limited to entities within the insurance industry, did not fall within the savings clause, and was preempted. *See id.* at 1040.

In *Texas Pharmacy*, the court relied on the test in *Metropolitan Life Insurance Co. v. Massachusetts* to analyze ERISA express preemption. In *Miller*, the Supreme Court expressly repudiated part of the test used in *Metropolitan Life*. In *Miller*, the Court held that "for a state law to be deemed a 'law . . . which regulates insurance' under § 1144(b)(2)(A), it must satisfy two requirements." 538 U.S. 329, 341-42. "First, the state law must be specifically directed toward entities engaged in insurance," and second, "the state law must substantially affect the risk pooling arrangement between the insurer and the insured." *Id*.

at 34 (citations omitted). The Fifth Circuit has not specifically reexamined *Texas Pharmacy* to determine whether it has been abrogated by *Miller*.

Second, this court wrongly cited *Texas Pharmacy* as support for finding that Quality Infusion's claim under the Texas Any Willing Provider statute was completely preempted by ERISA. *Texas Pharmacy* did not address complete preemption, but only conflict or express preemption. This error, however, does not alter the outcome of the jurisdictional analysis.

The *Miller* case, on which Quality Infusion relies for its assertion that ERISA preemption does not apply, did not address complete preemption under section 502, but only conflict preemption under section 514. The federal question removal jurisdiction issue is whether ERISA's civil enforcement provision completely preempts Quality Infusion's claim for "payment from [Aetna] pursuant to the Plan for the $71,850 in pharmaceutical services" rendered because the refusal to pay violated the Texas Any Willing Provider statute. (Docket Entry No. 1, p. 11, Plaintiff's Petition). *Miller*, a conflict preemption case that did not involve a claim for benefits under an ERISA Plan based on violations of a state Any Willing Provider statute, does not compel remand.

Guidance on complete preemption is provided by *Aetna Health Inc v. Davila*, 542 U.S. 200, 210 (2004), in which the Supreme Court held that "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted." *Davila*, 124 S.Ct. at 2495. The distinction between conflict preemption analysis

11

under *Miller* and complete preemption analysis under *Davila* is made clear in *Prudential Insurance Company of America v. National Park Medical Center, Inc.*, 413 F.3d 897 (8th Cir. 2005). In *Prudential,* the Eighth Circuit found that the Arkansas Any Willing Provider statute was not subject to conflict preemption under the savings-clause analysis required in *Miller*. The Eighth Circuit separately analyzed the issue of complete preemption under *Davila*. The Eighth Circuit concluded that damages sought under the civil penalties portion of the Arkansas Any Willing Provider statute for any cause of action that could have been brought under ERISA section 502 would be subject to complete preemption. 413 F.3d at 914.

The Texas Any Willing Provider statute does not have a civil penalties provision similar to the Arkansas statute. Quality Infusion bases its claim for damages on the denial of benefits "pursuant to the Plan," asserting that the denial was wrongful under the Texas Any Willing Provider statute. Quality Infusion is seeking benefits allegedly due under a Plan outside of and in addition to ERISA's remedial scheme. Under *Davila,* a state-law cause of action is completely preempted "if an individual, at some point in time, could have brought his claim under [ERISA § 502], and where there is no other independent legal duty that is implicated by a defendant's actions." *Davila,* 124 S.Ct. at 2496. Even a state law that is saved from express preemption under ERISA § 514 "will be pre-empted if it provides a separate vehicle to assert a claim for benefits outside of, or in addition to, ERISA's remedial scheme." *Id.* at 2500. The Supreme Court emphasized that a state-law cause of action need not duplicate an ERISA provision to be preempted. *Id.* at 2499. Rather, a state-law cause

12

of action is preempted if it arises from a duty created by ERISA or the terms of the relevant health benefit plan. *Id.* at 2497-99 (holding that the alleged "tort" duty "to exercise ordinary care" under the Texas Health Care Liability Act did not arise independently of the "contract" duties actionable under ERISA or the plan's terms).

Under *Davila*, complete preemption applies to Quality Infusion's claim for damages for the refusal to pay benefits "pursuant to the Plan and Texas' Any Willing Provider statute." (Plaintiff's Original Petition, Docket Entry No. 1, p. 8). This suit, brought under the Texas Any Willing Provider statute and the ERISA Plan, is a suit for benefits due under an ERISA Plan and could have been brought under ERISA. Complete preemption applies. The resulting cause of action is recharacterized as an action brought under ERISA and is removable to federal court.

The motion for reconsideration is denied.

### III.   The Summary Judgment Motion

Aetna has moved for summary judgment on a claim for relief under ERISA's civil enforcement provision. Quality Infusion does not dispute the application of the abuse of discretion standard. Instead, Quality Infusion asserts that the denial of benefits was arbitrary and capricious because the denial of benefits violated the Texas Any Willing Provider statute and because Aetna failed to investigate to determine whether the statute applied.

The record does not support Quality Infusion's claim that Aetna failed to investigate the claim. To the contrary, the record provides ample evidence that Aetna reviewed and examined Quality Infusion's claim that it was entitled to be paid for rendering services under

13

the Plan despite the fact that it was an out-of-network provider. Quality Infusion does not challenge Aetna's factual determination that there were network providers available to render the home-infusion services prescribed to the Plan participant. The record also shows that Aetna considered and rejected Quality Infusion's claim that under the Texas Any Willing Provider statute, Aetna was required to pay regardless of the Plan terms excluding coverage for out-of-network service providers unless no network providers were available or there was an emergency creating an urgent need. The record includes the appeal review of the claim, the appeal denial letter, the complaint appeal panel, and the final denial letter, all of which discuss Quality Infusion's claim that Aetna was compelled to pay for the services provided under the Plan, despite the Plan terms excluding coverage for out-of-network service providers, because of the Texas Any Willing Provider statute. (Docket Entry No. 15, Ex. 2-2).

Quality Infusion's claim under ERISA depends on its claim that under the Texas Any Willing Provider statute, Aetna was required to pay for non-network services despite the Plan provision excluding coverage for out-of-network services. Quality Infusion relies on article 21.52B § 2(a)(1) and (2). Aetna asserts that section 2(a)(1) does not apply because it covers a person who is a beneficiary of a policy, not a participant in a managed care plan. Aetna asserts that section 2(a)(2) does not apply because it has not denied Quality Infusion the right to participate as a contract provider under the Plan and Quality Infusion is not seeking the right to become a network provider under the Plan. Quality Infusion responds that by filing this lawsuit, it is seeking the right to be a network service provider for the services it gave

the Plan participant. (Docket Entry No. 18, p. 3).

Quality Infusion's argument under section 2(a)(1) fails. Quality Infusion argues that the word "policy" in that section does not refer to "health insurance policy," a statutory term defined to exclude coverage under an HMO, and that "plan" in other sections of section 2(a) does not refer to "managed care plan," a statutory term defined to include a "health maintenance organization." In 1991, section 2(a) of article 21.52B referred to a "health insurance policy" and section 2(a)(1) referred to "a person who is a beneficiary of the policy." Section 1(1) provided the following definition: a "'Health insurance policy . . . does not include evidence of coverage provided by a health maintenance organization. . . .'" In 1995, the term "managed care plan" was added to section 2(a) of article 21.52B, but section 2(a)(1) was unchanged. In 1995, "managed care plan" was defined as "a health maintenance organization, a preferred provider organization, or another organization that, under a contract or other agreement entered into with a participant in the plan . . . provides health care benefits. . . ." *Id*., § 1(6). The 1995 amendments also added the words "or plan" after "policy" to section 2(a)(2) and the words "or participant in a plan" after "beneficiary of a policy" to section 2(a)(3). Construing all the terms in the statute to give them all meaning makes it clear that "plan" means "managed care plan" and "policy" means "health insurance policy," which are defined terms in the statute.

Section 2(a)(1) was not changed when the statute was amended in 1995 to add references to managed care plans. Section 2(a)(1) refers only to a person who is a beneficiary of a health insurance policy and does not include a person who is a participant

in a managed care plan. "Policy" refers to "health insurance policy"; "plan" refers to "managed care plan." "Policy" and "beneficiary of a policy" are separate from "plan" and "participant in a plan," the terms added in 1995. Quality Infusion cannot as a matter of law show a violation under section 2(a)(1) because this section does not cover a participant in a managed care plan, such as the participant in the Plan at issue who assigned her Plan benefits.

Quality Infusion's claim under section 2(a)(2) also fails. This section prohibits a health insurance policy or managed care plan from denying a pharmacist or pharmacy the "right to participate as a contract provider under the policy or plan if the pharmacy or pharmacist agrees to provide pharmaceutical services that meet all terms and requirements and to include the same administrative, financial, and professional conditions that apply to pharmacies and pharmacists who have been designated as providers under the policy or plan . . . ." In *Texas Pharmacy*, the Fifth Circuit stated that the "effect of the statute is that any pharmacist willing to abide by the terms of a . . . network contract must be admitted to the network." 105 F.3d at 1037. The statute does not require a Plan that does not cover out-of-network services to do so. The record does not show that Quality Infusion applied for admission to Aetna's network of health care providers and was refused. To the contrary, the record shows that Aetna extended an offer to Quality Infusion to participate in Aetna's HMO network and submitted a proposed agreement, but received no response. (Docket Entry No. 15, Ex. 3, ¶¶ 3-4). Quality Infusion is not asking this court to require Aetna to allow it to become part of Aetna's network of service providers through the type of agreement that

applies to pharmacies and pharmacists who have been designated as providers under the Aetna HMO. To the contrary, Quality Infusion is using this damages lawsuit to join the HMO network on an individual Plan-participant basis. Joining the network on an individual Plan participant basis, without a care provider service agreement, does not meet all the terms and requirements that apply to pharmacies and pharmacists who are network providers. As a matter of law, Quality Infusion cannot show a violation of section 2(a)(2) of the Any Willing Provider statute because it does not provide a basis for a nonnetwork provider to recover ERISA benefits on behalf of an individual Plan participant.

This court concludes that as a matter of law, Quality Infusion cannot show a violation of the Texas Any Willing Provider statute that would provide a basis for recovery, either under the Plan and that statute or under ERISA. Aetna's motion for summary judgment is granted.

**IV.    Conclusion**

Quality Infusion's motion for reconsideration of this court's jurisdictional determination is denied. Aetna's motion for summary judgment is granted. Final judgment will be entered by separate order.

SIGNED on December 26, 2006, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge